NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230383-U

NO. 4-23-0383

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 27, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.K., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|     Petitioner-Appellee, | ) | No. 21JA57 |
|     v. | ) | |
| Paul K., | ) | Honorable |
|     Respondent-Appellant). | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights, concluding no meritorious issues could be raised on appeal.

¶ 2    On April 28, 2023, the trial court entered an order terminating the parental rights of respondent, Paul K., to his minor child, J.K. (born September 2020). Respondent appealed, and counsel was appointed to represent him. Appellate counsel now moves to withdraw, citing *Anders v. California*, 386 U.S. 738 (1967), on the basis that he cannot raise any potentially meritorious argument on appeal. The record indicates counsel sent a copy of his motion and accompanying memorandum of law to respondent by mail. Respondent has not filed a response. After reviewing the record and counsel's memorandum, we grant the motion to withdraw and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Case Opening

¶ 5           On March 1, 2021, the State filed a petition seeking to adjudicate J.K. neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)). The petition alleged J.K.'s mother, Roxanne K., and respondent had a history of domestic violence, drug use, and criminality. Despite having notice, neither respondent nor Roxanne K. appeared at the shelter care hearing. Following that hearing, the trial court found there was probable cause to believe J.K. was neglected and placed temporary guardianship and custody of J.K. with the Illinois Department of Children and Family Services (DCFS).

¶ 6           On August 24, 2021, the trial court adjudicated J.K. neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2020)). The court made J.K. a ward of the court and continued guardianship and custody with DCFS.

¶ 7           On September 23, 2022, the trial court changed the permanency goal to substitute care pending termination of respondent's parental rights.

¶ 8           On September 29, 2022, the State filed a petition to terminate respondent's parental rights. The petition alleged that respondent was an unfit parent in that he failed to make reasonable progress toward the return of J.K. to his care during a nine-month period after J.K. was adjudicated neglected, namely, the period of August 24, 2021, to May 24, 2022 (the relevant nine-month period) (750 ILCS 50/1(D)(m)(ii) (West 2022)). Roxanne K. passed away during the pendency of the proceedings.

¶ 9                                    B. Fitness Hearing

¶ 10          During the March 24, 2023, fitness hearing, the State presented the testimony of Ashley Woods, a caseworker with the Children's Home Association of Illinois. Woods testified

she handled the case during the relevant time period. According to Woods, respondent's service plan required that he complete a substance abuse assessment, complete parenting classes, attend individual counseling, participate in domestic violence classes, and submit to drug drops twice a month. During the relevant time period, respondent completed two drug drops, both of which tested positive for tetrahydrocannabinol (THC). The second drug drop, which respondent completed in September 2021, also tested positive for amphetamines. Woods testified respondent failed to engage in the remaining services during the relevant time period. In December 2021, respondent was incarcerated in the Tazewell County jail and remained incarcerated for the remainder of the relevant time period. On cross-examination, Woods indicated that before respondent's incarceration, he attended 6 of 16 scheduled visits with J.K. On redirect examination, Woods acknowledged respondent did not have the option to complete the required services while he was incarcerated.

¶ 11        Respondent testified he was prescribed Adderall from August 2021 through December 2021. He further indicated at the time of his incarceration, no services were available at the Tazewell County jail. On cross-examination, respondent admitted prior to his incarceration, he was not engaging in services because he was "concerned about [his] wife's *** health." Further, he acknowledged that he never provided the caseworker with a copy of his Adderall prescription.

¶ 12        The trial court found the State proved the allegation in its petition by clear and convincing evidence. Specifically, the court stated, "[W]e're in a much less likely chance of returning [J.K.] to [respondent's] care in May of 2022 because he's incarcerated." Further, the court noted respondent failed to engage in services and "missed the majority of his visits with the child" prior to respondent's incarceration.

¶ 13                                    C. Best Interest Hearing

¶ 14          On April 28, 2023, the trial court conducted the best interest hearing. The court took judicial notice of the best interest report without objection. The best interest report noted J.K. had been in his current foster placement for over two years. J.K.'s relationship with respondent was hindered by respondent's incarceration "as the only interactions the father and son could have were virtually for 20 minutes." The report highlighted the difficulty "to get a toddler to sit still or pay attention to a video call." Conversely, the report noted J.K. "has a strong relationship with his foster mother" and "[t]he foster mother loves [J.K.] and sees him as if he were her own child."

¶ 15          Woods testified J.K.'s foster mother provided J.K. with emotional support, physical safety, clothing, food, and shelter. She testified J.K. was currently in speech therapy and occupational therapy, and he was on the waitlist for behavioral therapy. Woods stated J.K.'s foster mother took him to his appointments and was willing to provide permanency through adoption. Regarding respondent, Woods testified he had been incarcerated from December 2021 to September 2022. During his incarceration, respondent participated in weekly 20-minute virtual visits with J.K. Prior to his incarceration, respondent was inconsistent with visitation. As of the date of the best interest hearing, respondent failed to complete the required services. On cross-examination, Woods acknowledged J.K. "felt comfortable" around respondent and that respondent was very affectionate towards J.K.

¶ 16          Respondent testified he was currently engaged in domestic violence classes and had a faith-based community with which he was involved. He was presently employed and worked 40 hours per week. Respondent described J.K. as "the joy of [his] life."

¶ 17    Following arguments, the trial court found termination of respondent's parental rights was in J.K.'s best interest. Specifically, the court concluded "the least disruptive placement and the child's need for permanency weighed heavily in favor of termination," noting "[respondent] is unfit, he's remained unfit for basically the child's life." The court opined it would be "purely speculative" that respondent would attain fitness.

¶ 18    This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20    On appeal, appellate counsel seeks to withdraw on the basis that he cannot raise any arguments of potential merit.

¶ 21    The procedure for appellate counsel to withdraw set forth in *Anders* applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). According to this procedure, counsel's request to withdraw must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. Counsel must "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous." *S.M.*, 314 Ill. App. 3d at 685. Counsel must then conclude the case presents no viable grounds for appeal. *S.M.*, 314 Ill. App. 3d at 685. In doing so, counsel should review both the unfitness finding and the best interest determination and indicate in the brief that he has done so. *S.M.*, 314 Ill. App. 3d at 685-86.

¶ 22    In the instant case, counsel asserts he has reviewed the record on appeal, including the report of proceedings of the termination hearings and has concluded there are no appealable issues of merit. Counsel states he has considered raising the argument that the trial court erred in finding respondent unfit during the relevant time period. He also indicates he has

- 5 -

considered raising an argument challenging the court's best interest finding. We address each argument in turn and ultimately agree with counsel's conclusion that there are no issues of arguable merit to be raised on review.

¶ 23                                  A. Unfitness Findings

¶ 24        We first address appellate counsel's assertion no meritorious argument can be made the trial court erred in finding that respondent failed to make reasonable progress during the relevant time period.

¶ 25        Termination of parental rights under the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2022)) is a two-step process. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 63. Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)), a parent may be found unfit if he fails to "make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected *** minor." A "parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication" constitutes a failure to make reasonable progress for purposes of section 1(D)(m)(ii). 750 ILCS 50/1(D)(m)(ii) (West 2022).

¶ 26        We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence

- 6 -

in the record [citation]." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 27　　　　　Here, the State proved by clear and convincing evidence that respondent failed to make reasonable progress toward the return of J.K. during the relevant time period as alleged in the State's petition to terminate. Pursuant to respondent's integrated assessment and supplemental task order, he was to: (1) participate in domestic violence classes, (2) complete a substance abuse assessment, (3) complete parenting education classes, (4) attend individual counseling, and (5) submit to random drug testing twice per month. At the time of the fitness hearing, respondent failed to complete any of the required services. Rather, respondent informed Woods he was not engaging in services because he was concerned about his wife's health. Respondent performed 2 out of 11 required drug drops, both of which tested positive for THC and the latter for amphetamines. While respondent testified he had a prescription for Adderall, he acknowledged he never provided information regarding the prescription to the caseworker. Even though respondent was incarcerated during a portion of the relevant time period, incarceration is no excuse for not making reasonable progress. See *In re K.H.*, 346 Ill. App. 3d 443, 455 (2004) (acknowledging the reasonable progress standard may seem harsh but explaining its purpose is to "abate the harm that a perpetual lack of permanency inflicts on children").

¶ 28　　　　　Based on this evidence, respondent did not "substantially fulfill his *** obligations under the service plan" and therefore did not make reasonable progress toward the return of J.K. to his care. 750 ILCS 50/1(D)(m)(ii) (West 2022). Accordingly, we agree with

counsel no meritorious argument can be made the trial court's finding was against the manifest weight of the evidence.

¶ 29                                            B. Best Interest Findings

¶ 30        Appellate counsel next asserts he can make no meritorious argument that the trial court's best interest finding was against the manifest weight of the evidence.

¶ 31        When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State must prove by a preponderance of the evidence that termination of parental rights is in the minor's best interest. *D.T.*, 212 Ill. 2d at 366. In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. On review, "[w]e will not disturb a court's finding that termination is in the child[ ]'s best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 32　　　　Here, the trial court's best interest finding was not against the manifest weight of the evidence. The best interest report showed J.K. was thriving in his foster placement. J.K. was bonded with his foster mother and she "is very attentive to [J.K.'s] needs and ensures he has the care he requires." The report indicated J.K.'s physical and emotional needs were being met by his foster mother, and she agreed to provide permanency for J.K. through adoption. Woods testified J.K. was currently receiving services for occupational therapy and speech therapy, and he was on the waitlist for behavioral therapy. While respondent was incarcerated, the authors of the best interest report noted, "A child of [J.K.'s] age is unable to engage effectively in video calls as it is difficult to get a toddler to sit still or pay attention to a video call." Although respondent continued to engage in visits with J.K. after his release from jail and was participating in domestic violence classes, the court ultimately concluded J.K.'s need for permanency and his foster placement being "the least disruptive placement" "weighed heavily in favor of termination." The court noted it would be "purely speculative" whether respondent would attain fitness.

¶ 33　　　　Based on our review of the record on appeal, we agree with appellate counsel no meritorious argument can be made that the trial court's best interest determination was against the manifest weight of the evidence. Accordingly, we grant counsel's motion to withdraw and affirm the court's judgment.

¶ 34                                III. CONCLUSION

¶ 35        For the reasons stated, we grant appellate counsel's motion to withdraw and

affirm the trial court's judgment.

¶ 36        Affirmed.